IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| THOMAS FRANK SCHMIDT,<br><br>Plaintiff,<br><br>vs.<br><br>PROGRESSIVE CASUALTY<br>INSURANCE COMPANY, *et al*,<br><br>Defendants. | Civil No. 26-00180 MWJS-KJM<br><br>ORDER GRANTING MOTION TO<br>DISMISS WITH LEAVE TO AMEND |

### INTRODUCTION

Plaintiff Thomas Frank Schmidt had a motorcycle insurance policy with

Defendant Progressive Casualty Insurance Company ("Progressive").  On August 2,

2023, a towing company removed three motorcycles he owned from a parking stall at

the Marco Polo Apartments—a stall tied to a condominium unit that, as explained

below, Schmidt did not own and had long been barred from entering.  Schmidt

reported the removal as a theft, and when Progressive declined to treat the tow as

insurance-covered theft loss, he brought suit in Hawai'i state court.  He asserts claims

for breach of contract, insurance bad faith, unfair settlement practices, declaratory relief,

conversion, and punitive damages.  And he names not only Progressive, but also a

second entity, Progressive Universal Insurance Company ("Progressive Universal"), as

Defendants.  For the reasons below, the court GRANTS Defendants' Motion to Dismiss.

## DISCUSSION

At the center of this case is a dispute about whether three motorcycles were stolen or simply towed.[1]  Schmidt held a Progressive insurance policy that, as relevant here, covered his motorcycles against theft.  He alleges that on August 2, 2023, three motorcycles were removed from a parking stall at the Marco Polo Apartments without his authorization and were never returned.

After the removal, Schmidt filed a report with the Honolulu Police Department (HPD).  According to the HPD report, Schmidt reported his motorcycle stolen, but the responding officer, after checking, determined that the motorcycle "had been towed by VIP Towing," and explained to Schmidt that it "was towed for Trespassing."  Dkt. No. 1-1 at PageID.23.  The report further recounts that, after the officer gave Schmidt a report card marked "MISC PUB," Schmidt "used his pen to cross it out and wrote 'THEFT.'"  Dkt. No. 1-1 at PageID.23.  Schmidt then filed a claim with Progressive, seeking value for the motorcycles and claiming that the removal was a theft within the meaning of his policy.  Dkt. No. 1-1 at PageID.13.  Progressive denied Schmidt's claim by letter, on the grounds that the loss did not fall within the policy's coverage for theft. Dkt. No. 1-1 at PageID.13, 55.

---

[1]      The following facts are drawn from Schmidt's complaint (which the court assumes are true at this stage) and the documents attached to it (which the court may consider in resolving the motion to dismiss).  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Schmidt initiated this matter in December 2025 by seeking leave of court to file his complaint.[2]  After he was granted leave to pursue this action, he filed his complaint in March 2026.  Defendants removed the action to this court and moved to dismiss the complaint, arguing that Schmidt is not entitled to relief under his stated claims.  Progressive Universal separately seeks dismissal, contending that it is not subject to personal jurisdiction in Hawaiʻi.  Schmidt did not file a timely opposition, and after the court directed him to show cause for his delay, he submitted a combined filing offering both an explanation for the delay and an opposition.  Schmidt is self-represented and receives his filings by mail.

Mindful of the latitude owed to litigants proceeding without counsel and of the preference for deciding cases on their merits, the court accepts his explanation and has considered his opposition in full.  But doing so does not change the outcome.  Even considering Schmidt's opposition, the court concludes that dismissal is warranted for the reasons explained below.

A.    Sufficiency of the Complaint's Allegations

Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each of Schmidt's claims for failure to state a claim.  To survive that motion, a

---

[2]    Schmidt has been designated a vexatious litigant in Hawaiʻi state court under Hawaiʻi Revised Statutes Chapter 634J, and therefore must obtain leave of court before filing any complaint.  He did so here, moving the Circuit Court for leave to file the present complaint, which the court granted.

complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court accepts well-pleaded factual allegations as true and construes them in the light most favorable to Schmidt, but it does not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.*, nor does it accept allegations that the complaint's own exhibits contradict, *see Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).[3]  Because Schmidt is self-represented, the court construes his pleadings liberally.

Defendants' motion is organized around two threshold propositions that, in their view, defeat most of the complaint before the individual causes of action are reached. The court addresses those threshold points first, as applicable to Schmidt's breach-of-contract claim, then turns to the remaining claims in turn.

---

[3]      Schmidt filed his complaint in Hawaiʻi state court before Defendants removed the case.  At that time, the complaint was governed by the Hawaiʻi notice-pleading standard, not the federal plausibility standard.  *See Bank of Am., N.A. v. Reyes-Toledo*, 143 Hawaiʻi 249, 262, 428 P.3d 761, 773 (2018) (rejecting *Twombly* and *Iqbal* for Hawaiʻi state courts), *overruled on other grounds by Wilmington Sav. Fund Soc'y, FSB v. Domingo*, 155 Hawaiʻi 1, 556 P.3d 347 (2024).  After removal, however, the Federal Rules of Civil Procedure govern.  *See* Fed. R. Civ. P. 81(c)(1).  The court therefore applies Rule 12(b)(6)'s plausibility standard here, while taking the case's procedural history and Schmidt's self-represented status into account in deciding whether leave to amend is appropriate.  *See Jones v. Rising Phoenix Holdings Corp.*, Civ. No. 25-00178 MWJS-RT, 2026 WL 241849, at *4 (D. Haw. Jan. 28, 2026).

### 1.    Breach of Contract Claim

Defendants' first threshold argument is that no theft occurred at all.  As they put it, although "Mr. Schmidt's insurance policy did protect him against theft, under any definition of theft, the perpetrator . . . has to have the requisite mental state, specifically, the intent to deprive the victim of the property at issue," and "[t]here are no allegations that VIP Towing acted with the necessary intent."  Dkt. No. 6-1, PageID.90.  The court agrees that intent to deprive is an element of theft in its ordinary sense.  Schmidt's policy insured his motorcycles against theft but did not define that term.  And an undefined term in an insurance policy is read according to its plain and ordinary meaning.  *See Nautilus Ins. Co. v. Hawk Transp. Servs., LLC*, 792 F. Supp. 2d 1123, 1131 (D. Haw. 2011).  In its ordinary sense, theft denotes the "wrongful taking and removing of another's personal property with the intent of depriving the true owner of it."  Black's Law Dictionary (12th ed. 2024).

Measured against that standard, the complaint comes up short.  It alleges only that the motorcycles were removed without authorization and not returned; it says nothing about the intent of whoever removed them.  Schmidt asks the court to infer a theft from the bare fact of an unreturned taking, but his own exhibits supply an "obvious alternative explanation" that defeats that inference:  the vehicles were towed. *Twombly*, 550 U.S. at 567.  The HPD report Schmidt attached states that the motorcycles "had been towed by VIP Towing" and "was towed for Trespassing."  Dkt. No. 1-1 at

5

PageID.23.  To allege a theft, Schmidt had to plead facts rendering his inference of theft plausible—despite the obvious benign alternative—and he has pleaded none.  Schmidt has offered no factual basis to conclude that a tow undertaken in the belief that a vehicle is parked unlawfully is a taking with intent to deprive the owner of his property, and has offered no factual basis to infer that something more egregious occurred.

Schmidt's opposition does not close that gap.  He argues principally that whether the removal "qualifies as theft, larceny, conversion, wrongful taking, or another covered loss should not be resolved against Plaintiff at the pleading stage," and that the issue should await discovery.  Dkt. No. 15, PageID.755.  But the defect in the complaint is not one that discovery could cure.  The question at this stage is whether the facts Schmidt has pleaded and the documents he has attached are sufficient to allege a theft, and they do not.  Discovery into the towing company's authority or the handling of the claim cannot supply an intent to deprive that the pleaded facts affirmatively negate.  Schmidt also urges that the removal occurred without his authorization and that the motorcycles were never returned, *id.* at PageID.755, but those facts are equally consistent with a tow and do not, without more, describe a theft because they lack the requisite intent.

Schmidt separately points to a Progressive insurance identification card he has located, which, he says, lists four motorcycles—two BMWs, a Harley-Davidson, and a Suzuki Hayabusa—historically associated with Policy No. 75961084.  Dkt. No. 15, PageID.751, 756.  Schmidt forthrightly acknowledges that the card is dated 2019 to 2020

6

and does not establish that all four motorcycles were covered on the date of loss:  he

offers it instead to show that the policy history is a matter for discovery.  *Id.* at

PageID.752.  That history has no bearing on the threshold problem.  Whether the policy

covered one motorcycle or four, and whatever its history, the removal Schmidt

describes was a tow rather than a theft, and so fell outside the policy's theft coverage

regardless of how many vehicles the policy reached.[4]

Defendants' second threshold argument is that Schmidt's theory rests on a

parking stall that was never his.  They contend that Schmidt "has no right to occupy the

Marco Polo Apartment unit" and, "[f]or the same reasons, . . . no right to use the

parking stall associated with that unit."  Dkt. No. 6-1, PageID.94-95.  That contention is

supported for two independent reasons.  First, the documents attached to the complaint

refute Schmidt's claim to the stall:  the Family Court's 2022 divorce order grants his

former spouse exclusive occupancy of the unit.  Dkt. No. 1-1, at PageID.39.  And the

court need not accept allegations that a plaintiff's own exhibits contradict.  *Gonzalez*, 759

F.3d at 1115.

---

[4]    Defendants represent that "Progressive's own records indicate that only one
motorcycle was covered by Progressive and stolen on August 2, 2023," because by that
date Schmidt "had already removed the other two motorcycles from his insurance
policy."  Dkt. No. 6-1, at PageID.92.  For purposes of this motion, however, Defendants
accept the Complaint's allegation that three motorcycles were stolen and that Schmidt
had coverage for all three.  *Id.*  The court does the same and assumes, without deciding,
that all three towed motorcycles were covered.  But that assumption does not change
the conclusion.

The materials attached to Schmidt's complaint bear on his assertion that the stall was his to use.  Schmidt's claim rests on his asserted ownership of the Marco Polo unit associated with the stall, Apartment 2603.  Dkt. No. 1-1 at PageID.29.  A Family Court decree included with the complaint, however, lists the unit among the assets of the marital estate, directs that it be sold with the proceeds divided, and grants Schmidt's former spouse the "right of exclusive occupancy" of the property pending sale.  Dkt. No. 1-1 at PageID.38–39.  Other materials Schmidt attached reflect that, in an earlier action he filed against the Association of Apartment Owners of the Marco Polo Apartments, the Circuit Court of the First Circuit ruled that Schmidt held no ownership interest in the unit.  Dkt. No. 1-1 at PageID.29.

Second, and independently, the ownership question has already been decided against Schmidt.  As Defendants observe, Schmidt "has already litigated this exact point in a separate proceeding against the Marco Polo AOAO and lost."  Dkt. No. 6-1, PageID.91.  Under Hawaiʻi law, issue preclusion bars relitigation where the issue is identical to one decided in a prior action, that determination was essential to a final judgment on the merits, and the party to be precluded was a party to the earlier suit. *See Field v. Nat'l Collegiate Athletic Ass'n*, 143 Hawaiʻi 362, 377, 431 P.3d 735, 750 (2018). Each requirement is met:  the Circuit Court resolved Schmidt's ownership of Unit 2603 against him, that ruling was essential to the judgment entered for the association, and Schmidt was the plaintiff there.  That Progressive was not a party to the earlier action is

8

immaterial, because issue preclusion may be asserted defensively by a non-party to the prior suit against a party who litigated and lost the issue. *See Exotics Hawaii-Kona, Inc. v. E.I. DuPont De Nemours & Co.*, 104 Hawaiʻi 358, 365, 90 P.3d 250, 257 (2004).

Schmidt resists this conclusion by contending that Defendants improperly "conflated condominium deed ownership and parking-stall authority with vehicle ownership, insurance coverage, and Plaintiff's insurable interest in the motorcycles." Dkt. No. 15, PageID.752. There is some force to the observation that ownership of the motorcycles is distinct from ownership of the stall. But the distinction does not save the complaint, because the two threshold defects are independent: even setting the ownership of the stall to one side, the removal Schmidt describes was a tow, not a theft, and his insurable interest in the motorcycles cannot transform a tow into a covered theft loss.

Because the breach-of-contract claim depends on the premise that a covered theft occurred, and both threshold propositions defeat that premise, the breach-of-contract claim is dismissed.

### 2. Insurance Bad Faith and Unfair Settlement Practices

Schmidt's second and third causes of action—for insurance bad faith and unfair settlement practices—both rest on the contention that Progressive failed to investigate his claim adequately before denying it. Defendants argue that "the allegations in support of both claims are wholly conclusory." Dkt. No. 6-1, PageID.104. The court

agrees.  The complaint alleges in substance only that Progressive "failed to conduct a reasonable investigation" and that it "engaged in conduct prohibited by HRS § 431:13-101," without pleading any facts describing what a reasonable investigation would have entailed or how Progressive's fell short.  *Id.* at PageID.104.  Allegations pitched at that level of generality do not state a claim.  *Iqbal*, 556 U.S. at 678.

The bad faith claim flounders for a second, independent reason:  it is untimely.  A claim for insurer bad faith sounds in tort and is governed by the two-year limitations period of HRS § 657-7.  *See Christiansen v. First Ins. Co. of Haw.*, 88 Hawaiʻi 442, 450–52, 967 P.2d 639, 647–49 (App. 1998).  The conduct Schmidt complains of—the assertedly deficient investigation—was complete no later than Progressive's denial letter of August 7, 2023, more than two years before Schmidt initiated this action in December 2025.  A limitations defense apparent from the face of the complaint may be resolved on a motion to dismiss.  *See Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1161 n.14 (D. Haw. 2018).  The bad faith and unfair settlement practices claims are dismissed.

### 3. Declaratory Relief

Schmidt's fourth cause of action seeks a declaration regarding Progressive's denial of his insurance claim.  Defendants correctly argue that the claim is improper because declaratory relief "operates prospectively and is not intended to redress past wrongs."  Dkt. No. 6-1, PageID.106.  Because declaratory relief is forward-looking, it is not a vehicle for adjudicating completed conduct or for declaring that one party is liable

10

to another for past acts.  *See Manos v. MTC Fin., Inc.*, 2017 WL 8236356, at \*13–14 (C.D. Cal. Dec. 21, 2017).

Schmidt's opposition does not show otherwise.  He acknowledges Defendants' argument that his declaratory relief claim concerns past conduct and states that, if the court agrees, it should dismiss only that count—not the entire case.  Dkt. No. 15, at PageID.758–59.  He further explains that his primary claim is for damages arising from the denial of insurance benefits, claim handling, and alleged undervaluation.  *Id*.  The court agrees that dismissal of the declaratory relief count does not require dismissal of the case as a whole.  But Schmidt's request for declaratory relief is merely his breach-of-contract theory restated in declaratory form, and his contract claim supplies the proper vehicle for any remedy arising from Progressive's denial of benefits.  The declaratory relief claim is therefore dismissed.

### 4.    Conversion

Schmidt's fifth cause of action alleges conversion.  As Defendants note, conversion requires a "distinct act of dominion wrongfully exerted over another's personal property," *Yoneji v. Yoneji*, 136 Hawai'i 11, 16, 354 P.3d 1160, 1165 (Ct. App. 2015) (citation omitted), and they observe that "there are . . . no allegations in the complaint that Mr. Schmidt's insurers took his motorcycle or exerted dominion over it." Dkt. No. 6-1, PageID.107–08.  It is true that, unlike theft, "conversion does not require wrongful intent." *Freddy Nobriga Enters., Inc. v. State, Dep't of Hawaiian Home Lands*, 129

11

Hawaiʻi 123, 129–30, 295 P.3d 993, 999–1000 (Ct. App. 2013).  But Schmidt's complaint

alleges no act by Progressive—as opposed to VIP Towing—directed at the motorcycles.

Schmidt does not contend otherwise.  He responds instead that he "may be able

to plead additional facts concerning Progressive's role, knowledge, claim handling,

salvage, recovery rights, refusal to assist in recovery, involvement in disposition or non-

return, or other facts learned through discovery," and he acknowledges that "[i]f

discovery shows that Progressive did not exercise dominion or control over the

motorcycles, . . . the conversion claim may not proceed against Progressive."  Dkt. No.

15, PageID.759.  That response confirms the defect rather than curing it:  Schmidt

identifies no act of dominion Progressive has already exerted, and a conversion claim

cannot rest on the hope that discovery will turn one up.  The conversion claim is

therefore dismissed.

### 5.    Punitive Damages

Schmidt's sixth cause of action pleads punitive damages as a standalone claim.

Defendants correctly observe that, under Hawaiʻi law, "punitive damages are a type of

remedy incidental to other causes of action" rather than an independent claim.  Dkt.

No. 6-1, PageID.108 (quoting *Philadelphia Indem. Ins. Co. v. Ohana Control Sys., Inc.*, 289 F.

Supp. 3d 1141, 1153 (D. Haw. 2018)).  The freestanding claim for punitive damages is

dismissed, without prejudice to Schmidt's ability to seek punitive damages as a remedy

should he plead a viable underlying claim.

12

B.      Personal Jurisdiction over Progressive Universal

Progressive Universal separately moves under Rule 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction.  Dkt. No. 6-1, at PageID.108.  On such a motion, Schmidt bears the burden of establishing that the exercise of jurisdiction is proper, and the court may consider evidence outside the pleadings.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Due process permits a court to exercise jurisdiction over a nonresident defendant only where that defendant has contacts with the forum sufficient that suit there comports with "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Those contacts may support either general or specific jurisdiction, and neither is present here.

General jurisdiction reaches a corporation only where it is "essentially at home," which, absent the exceptional case, means its state of incorporation and the state of its principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Progressive Universal supports its motion with the declaration of Andrea Weybright, which establishes that it is neither incorporated in Hawaiʻi nor headquartered here, and Schmidt offers nothing to the contrary.  Dkt. No. 6-1, at PageID.110.  There is accordingly no basis for general jurisdiction.

13

Specific jurisdiction is likewise absent.  It requires that the defendant purposefully direct its activities at the forum or avail itself of the privilege of conducting business there, and that the plaintiff's claims arise out of or relate to those forum contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *Walden v. Fiore*, 571 U.S. 277, 283–85 (2014).  The inquiry focuses on the defendant's own conduct connecting it to the forum.  *Walden*, 571 U.S. at 284–85.  Here, the unrebutted Weybright declaration reflects that Progressive Universal was not a party to Schmidt's policy and had no part in handling or denying his claim.  Dkt. No. 6-1, at PageID.110-11.  Without any conduct by Progressive Universal directed at Hawai'i from which Schmidt's claims arise, specific jurisdiction does not lie.

Schmidt does not meaningfully dispute those points.  Instead, he explains that he named Progressive Universal "based on the information available to him at the time and the relationship among the Progressive entities."  Dkt. No. 15, at PageID.760.  He further states that, if the court concludes Progressive Universal is not a proper party, he does not oppose amending his claims to remove Progressive Universal and proceed against Progressive Casualty Insurance Company, "or to plead additional jurisdictional facts if discovery later shows that Progressive Universal had some role in the policy, claim, denial, adjustment, corporate relationship, or communications."  *Id*.  That response does not establish personal jurisdiction over Progressive Universal.  Schmidt identifies no facts showing that Progressive Universal itself had contacts with Hawai'i

14

giving rise to his claims, and his speculation that discovery might later reveal such a

connection is not enough to carry his burden under Rule 12(b)(2).  The claims against

Progressive Universal are therefore dismissed without prejudice for lack of personal

jurisdiction.

####    C.    Leave to Amend

Leave to amend is freely given when justice requires, and a self-represented

plaintiff should ordinarily have a chance to cure pleading defects unless amendment

would be futile.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Schmidt has asked

for that opportunity and has described additional facts he believes he can allege,

including matters concerning his policy history, the circumstances of the removal, and a

possible basis for tolling.  Dkt. No. 15, at PageID.760-62.  The court takes no position on

whether those allegations would suffice.  But on this record, the court cannot conclude

that amendment would be futile as to every claim.  The dismissal is therefore without

prejudice, consistent with the limitations above:  Schmidt may amend his damages-

based claims against Progressive Casualty, but he may not replead a standalone

punitive-damages claim, a declaratory-relief claim premised only on past conduct, or

claims against Progressive Universal without facts establishing a basis for personal

jurisdiction.

Three points should guide any amended pleading.  First, an amended complaint

must account for the documents Schmidt has himself submitted and for the Circuit

15

Court's prior ruling on ownership; allegations that merely contradict those materials will not state a claim.  Second, the bad-faith claim must reckon with the two-year limitations period, and any theory of tolling or delayed accrual must rest on pleaded facts.  Third, Schmidt's amended pleading may not name any additional defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and the complaint is dismissed without prejudice.  Schmidt may file an amended complaint consistent with this order by July 28, 2026.  Failure to file an amended complaint by that date will result in the automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  June 30, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

*Schmidt v. Progressive Casualty Insurance Company, et al*; Civil No. 26-00180 MWJS-KJM;
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND