IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THOMAS FRANK SCHMIDT,<br><br>Plaintiff,<br><br>vs.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Civil No. 26-00180 MWJS-KJM<br><br>ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT |

## INTRODUCTION

Plaintiff Thomas Frank Schmidt brings this action, representing himself, against Defendant Progressive Casualty Insurance Company ("Progressive"). Schmidt challenges Progressive's denial of insurance benefits after his motorcycles were removed from a parking stall at an apartment complex in Honolulu, Hawaiʻi. After the court dismissed his original complaint with leave to amend, Schmidt filed a First Amended Complaint ("FAC"), Dkt. No. 20, which Progressive now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 21. For the reasons that follow, Progressive's motion is GRANTED, and the FAC is dismissed with prejudice and without further leave to amend.

//

//

## DISCUSSION

Schmidt's FAC arises from the August 2023 towing of motorcycles he had parked without authorization at the Marco Polo Apartments. Schmidt contends that the removal of those motorcycles constituted a loss covered by his Progressive insurance policy. The court's prior order recounted the factual and procedural history of the dispute at some length, including the circumstances surrounding the tow, Schmidt's ownership of the motorcycles, and the relevant Family Court proceedings. *See Schmidt v. Progressive Cas. Ins. Co.*, Civ. No. 26-00180, 2026 WL 1878423 (D. Haw. June 30, 2026). The court does not repeat that history in full here and instead summarizes only the facts and allegations necessary to resolve Progressive's motion to dismiss.

The present motion concerns Schmidt's second attempt to plead these claims. In dismissing the original complaint, the court granted Schmidt leave to amend and identified several deficiencies that any amended pleading would need to address. Among other things, the court explained that any amended complaint would need to account for the documents Schmidt submitted, the Hawai'i Circuit Court's prior ruling, and that any renewed bad-faith claim would need to address the applicable two-year limitations period. *Id*. at *5, *7.

### A. Sufficiency of the Complaint's Allegations

The question is whether Schmidt's amended pleading cures the deficiencies the court previously identified and states a viable claim for relief. "A complaint may be

dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court accepts well-pleaded factual allegations as true, but does not accept either conclusory allegations or allegations that are contradicted by exhibits attached to the complaint. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014); *Schmidt*, 2026 WL 1878423, at *2.

Departing from the original complaint, the FAC changes Schmidt's theory of coverage for the August 2023 tow. Schmidt now invokes a 2019 Family Court order that gave his former spouse ownership of the Marco Polo property and characterizes the removal more broadly as an accidental or otherwise covered loss. Dkt. No. 20, at PageID.905-07, 913-14. The FAC also alleges a separate contract theory concerning Progressive's valuation of a Suzuki Hayabusa and renews a bad-faith claim based on Progressive's handling of that vehicle. *Id.* at PageID.911, 914-16. Schmidt argues that Progressive's motion improperly asks the court to resolve factual disputes concerning the Family Court proceedings, condominium records, parking authority, and the tow. Dkt. No. 25, at PageID.1115-18.

But the dispositive problems are pleading problems. And to resolve them, the court need not choose between competing evidence. Instead, under the relevant standard, it asks only whether the FAC alleges facts sufficient to state a plausible claim while accounting for the documents Schmidt incorporated into his pleadings.

**1. Breach of Contract: August 2023 Tow**

Schmidt's first cause of action alleges that Progressive breached the policy by refusing to pay benefits for the motorcycles removed from the Marco Polo parking stall. Dkt. No. 20, at PageID.913-14. He also alleges that Progressive failed to adequately investigate who requested or prompted the tow. *Id*. at PageID.907, 914. Unlike the original complaint, the FAC no longer depends solely on the policy's theft coverage. Instead, it alleges that the removal was a covered loss and alleges that Progressive "breached the insurance contract by denying coverage based on an incomplete and improper analysis of the loss." *Id*. at PageID.913.

Under Hawaiʻi law, whether a loss is an "accident" is evaluated from the insured's perspective. *AIG Hawaiʻi Insurance Co. v. Estate of Caraang*, 74 Hawaiʻi 620, 635, 851 P.2d 321, 328-29 (1993). If an insured's act or omission has the claimed injury as its expected result, the injury is not accidental for purposes of coverage. *Id.* So to make the alleged tow plausibly accidental, Schmidt must allege facts suggesting that the motorcycles were entitled to remain in the Unit 2603 parking stall.

The FAC does not do so. It relies principally on an August 2019 Family Court order, which Schmidt describes as creating a "property-preservation context." Dkt. No. 20, at PageID.905, 907. But that order does not establish that Schmidt had any interest in that property: instead, it directed Schmidt to leave Unit 2603 and the associated premises, barred him from the third-floor parking area, and gave him a four-hour period with an HPD escort to retrieve his personal belongings. It further stated: "Any disputed items are to be left at the property." Dkt. No. 20-1, at PageID.920. But the FAC never alleges, and the record does not show, that the motorcycles were "disputed items," in which case they would be allowed to remain at the premise.

Whether the motorcycles might be qualified as "disputed items" is therefore central to Schmidt's theory. Here, there is no dispute that Schmidt was the sole titleholder of the motorcycles. Schmidt's submitted materials identify him as the titleholder of the 1991 Harley-Davidson and identify him and his son as titleholders of the two 1998 BMWs. Dkt. No. 20, at PageID.906. In fact, the Family Court awarded the motorcycles that were part of the marital estate to Schmidt. *See* Dkt. No. 1-1, at PageID.37-38, 52, 58-59. Those documents therefore do not support an inference that Schmidt's former spouse claimed an ownership interest in the motorcycles or that the motorcycles fell within the narrow category of "disputed items" permitted to remain at the Marco Polo Apartments. And even if a dispute had existed in 2019, Schmidt's

submitted exhibits show that the relevant property division was resolved before the August 2023 tow.

Schmidt's opposition to the motion to dismiss does not identify an allegation to the contrary. It instead points more generally to overlapping condominium disputes, access restrictions, and other documents and argues that their significance should await discovery. Dkt. No. 25, at PageID.1116-18. But discovery cannot supply missing allegations. *See Iqbal*, 556 U.S. at 686 (holding that when a complaint failed to state a cognizable claim, the plaintiff was "not entitled to discovery, cabined or otherwise"). Nor can general references to surrounding disputes overcome the documents incorporated into the pleadings. *See Gonzalez*, 759 F.3d at 1115. In fact, Schmidt's submissions illustrate that the tow was, if anything, the expected consequence of his leaving the motorcycles parked in the relevant stalls at Marco Polo. Because the FAC does not plausibly allege a covered accidental loss arising from the tow, the first cause of action fails to state a claim and must be dismissed.

**2. Breach of Contract: Suzuki Hayabusa**

Schmidt's second cause of action alleges that Progressive breached the policy by undervaluing a Suzuki Hayabusa on a separate claim. Dkt. No. 20, at PageID.914. The FAC alleges that the amount Progressive paid "was insufficient and did not reflect the proper amount owed under the policy," and that Progressive failed to fairly consider

the motorcycle's "actual condition, mileage, equipment, upgrades, comparable replacement cost, local Hawaii market conditions, and other valuation evidence." *Id.*

Those allegations do not cross the line from conclusion to plausible factual claim. The FAC does not identify the valuation Progressive assigned, the valuation Schmidt contends the policy required, or any policy provision governing valuation that Progressive allegedly violated. Listing categories that might affect value, without alleging how any one of them actually made Progressive's payment deficient, is the sort of "threadbare" pleading Rule 8 does not permit. *Iqbal*, 556 U.S. at 678. The second cause of action is therefore dismissed.

**3. Insurance Bad Faith/Unreasonable Claim Handling**

The FAC's third cause of action asserts bad faith based both on Progressive's denial of the August 2023 claim and on the alleged undervaluation of the Hayabusa. Dkt. No. 20, at PageID.915-16. Neither theory is viable.

As to the August 2023 claim, the court already held that a tort claim for insurance bad faith is subject to Hawai‘i's two-year limitations period. *Schmidt*, 2026 WL 1878423, at *4; *see Christiansen v. First Insurance Co. of Hawai‘i*, 88 Hawai‘i 442, 450-52, 967 P.2d 639, 647-49 (App. 1998), *aff'd in part, rev'd in part on other grounds*, 88 Hawai‘i 136, 963 P.2d 345 (1998). And there is no dispute that Progressive denied the tow-related claim on August 7, 2023. Dkt. No. 1-1, at PageID.55, 61. Nor is there any dispute that Schmidt did not initiate this action until more than two years later. The prior order therefore

specifically warned that any amended bad-faith theory had to plead facts supporting tolling or delayed accrual. *Schmidt*, 2026 WL 1878423, at *7.

The FAC attempts to do so by alleging, in substance, that Progressive did not disclose enough about the basis for its denial and that the significance of certain issues became clearer only later. Dkt. No. 20, at PageID.911-13. Those allegations do not support a fraudulent concealment theory. Under Hawaiʻi law, fraudulent concealment requires affirmative acts designed to conceal the fact that the plaintiff has a cause of action; "[i]f there is a known cause of action there can be no fraudulent concealment." *Au v. Au*, 63 Hawaiʻi 210, 215-16, 626 P.2d 173, 178 (1981). By August 7, 2023, Schmidt knew that Progressive had denied his claim and why: Progressive viewed the removal as an authorized tow or legal impound for unauthorized parking, rather than as a theft. Dkt. No. 1-1, at PageID.61. By that date, Schmidt had also made known his belief that the denial was wrongful. The FAC does not identify any act by Progressive that concealed the existence of Schmidt's entitlement to claim benefits, and as discussed above, these are not facts that can be cured through discovery.

The Hayabusa branch of the bad-faith claim is therefore independently deficient. The bad-faith allegations repeat the same conclusory valuation theory discussed above. And the claim is untimely in any event: the payment Schmidt challenges was issued on July 6, 2022, more than two years before Schmidt sought leave to file this action in state court in December 2025. *See* Dkt. No. 21-6, at PageID.1073; Dkt. No. 21-7, at

PageID.1075. The FAC pleads no tolling theory directed to that separate 2022 claim. The third cause of action is therefore dismissed.

**4. Unfair Claim Settlement Practices**

Schmidt labels his fourth cause of action "unfair claim settlement practices," but the FAC expressly states that he "does not plead this count as an independent Chapter 480 treble-damages claim" and instead offers the allegations only in support of his other causes of action. Dkt. No. 20, at PageID.917. Schmidt's opposition likewise agrees that his proposed Second Amended Complaint ("SAC")—which Schdmit attached to his opposition, and which the court will more fully address below—does not assert unfair settlement practices as a separate claim. Dkt. No. 25, at PageID.1126. Given that Schmidt's filings do not plead this claim as a separate cause of action, there is no standalone fourth cause of action to proceed. The "unfair claims settlement practices" claim is dismissed.

**B. Leave to Amend**

The upshot is that Schmidt's FAC has been dismissed in its entirely. That raises the question of whether Schmidt should be given another opportunity to attempt to address the deficiencies in the FAC.

The rule is that leave to amend should be freely given when justice requires, and that rule is applied with particular care to self-represented litigants. Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). But "futility of

amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A proposed amendment is futile if it would not survive Rule 12(b)(6). *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). And a court's discretion to deny further leave is "particularly broad" after a plaintiff has already been given an opportunity to amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (cleaned up).

This is not a case in which the court must speculate how Schmidt might amend again. As noted, Schmidt attached his proposed SAC to the opposition and asks for leave to file it if the FAC is dismissed. Dkt. No. 25, at PageID.1112. And as Schmidt emphasizes, the proposed SAC "materially restructures the pleading" by presenting a chronological narrative, removing claims no longer pursued, narrowing the defendants, and separating factual allegations from legal conclusions. *Id.* at PageID.1119-22. The court recognizes those organizational changes. But Rule 15 asks whether amendment could produce a legally sufficient claim, not merely a better-organized complaint with a clearer chronology of facts.

Having evaluated Schmidt's proposed SAC, the court concludes that it still does not cure the identified defects in the initial complaint and the FAC. To begin with, the SAC does not cure the defect in Schmidt's tow-related contract theory because it does not allege facts showing that the motorcycles were entitled to remain in the Unit 2603 stall. Indeed, it no longer expressly relies on the Family Court order's "disputed items"

language at all. Instead, it alleges generally that prior condominium disputes, Family Court access restrictions, and condominium governance documents formed part of the relevant factual background. Dkt. No. 25-2, at PageID.1139-44. But those allegations do not explain why the 2019 order and later property-division exhibits should be read differently from what Schmidt's own exhibits show: that he was directed to remove his personal property and that the motorcycles were not property disputed with the occupant of Unit 2603.

The principal new allegations concern the Marco Polo House Rules, which Schmidt says he first obtained and reviewed on August 5, 2026. *Id*. at PageID.1135, 1144. But the proposed SAC states that Schmidt "does not allege that the House Rules determine insurance coverage under the policy." *Id*. at PageID.1144. Nor does it allege that the House Rules gave Schmidt a right to use the Unit 2603 stall, that the motorcycles were properly registered there, or that the tow violated any identified rule. The House Rules may provide additional context, but they do not supply the missing facts necessary to plausibly allege a covered accidental loss.

The proposed SAC likewise confirms that the Hayabusa claims cannot be cured. It does not mention the Hayabusa or assert any claim based on Progressive's valuation of that motorcycle. *See generally* Dkt. No. 25-2. That omission is consistent with Schmidt's statement that the proposed pleading removes claims he no longer pursues, but it provides no basis for permitting further amendment of those deficient claims.

Nor does the proposed SAC cure the statute of limitations problem. Schmidt's new timing allegation is that he first reviewed the House Rules in August 2026. Dkt. No. 25-2, at PageID.1144. But nothing in the proposed pleading alleges that Progressive concealed those rules from him or explains why their later discovery prevented him from recognizing a potential bad-faith claim when, years earlier, he already knew of and challenged Progressive's denial. The proposed SAC instead seeks discovery into Progressive's internal file to determine what documents and facts Progressive considered. *Id*. at PageID.1145-47. That request does not supply the missing basis for tolling: Schmidt still does not properly allege concealment by Progressive or otherwise explain why he could not have known of his asserted claim when Progressive denied it. The proposed SAC therefore does not cure the time bar that the court expressly told Schmidt he would have to address. *Schmidt*, 2026 WL 1878423, at *7.

Finally, the proposed SAC reasserts a declaratory judgment claim concerning Progressive's obligations under the policy. Dkt. No. 25-2, at PageID.1147-48. The court previously explained that declaratory relief is forward-looking and that Schmidt could not replead a declaratory-relief claim premised only on completed past conduct. *Schmidt*, 2026 WL 1878423, at *5, *7. The proposed SAC still asks, in substance, whether benefits are due for the already-denied 2023 claim. But that is the contract theory Schmidt has already pleaded restated in declaratory form.

The proposed SAC, in short, confirms that further amendment would be futile. Schmidt has already amended once after the court identified the defects in his claims, and he has now presented the precise pleading he would file if given another opportunity. In similar circumstances, this court has denied further leave when a plaintiff's proposed amended complaint confirmed that the plaintiff could not allege facts making the proposed claim plausible. *See The Estate Trust Known as Carolyn Zemeckis v. Sloan Servicing*, Civ. No. 25-00375 MWJS-RT, Dkt. No. 50, at PageID.576-77 (D. Haw. Feb. 3, 2026). Here too, despite the opportunity to amend and the numerous exhibits Schmidt has marshaled in support of his claims, the proposed SAC still does not allege a viable theory.

Because further amendment would be futile and Schmidt has already had a meaningful opportunity to cure the deficiencies identified in the court's prior order, the court DENIES leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Dkt. No. 21, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE and without further leave to amend. This order resolves all pending motions. The Clerk is DIRECTED to enter judgment and close this case.

//

//

IT IS SO ORDERED.

DATED: August 27, 2026, at Honolulu, Hawai‘i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge